UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


ALLEN VAN DYKE,                              Case No. 3:11-cv-06348-HA

    Plaintiff,                              OPINION AND ORDER

  v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

---

HAGGERTY, District Judge:

    Plaintiff Allen Van Dyke seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). After reviewing the record, this court concludes that the Commissioner's decision must be AFFIRMED.

## STANDARDS

    A claimant is considered "disabled" under the Social Security Act if: (1) he or she is unable to engage in any substantial gainful activity (SGA) "by reason of any medically

OPINION AND ORDER- 1

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Hill v. Astrue,* 688 F.3d 1144, 1149-50 (9th Cir. 2012) (citing 42 U.S.C. § 1382c(a)(3); *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999)); 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a). In steps one through four, the Commissioner must determine whether the claimant (1) has not engaged in SGA since his or her alleged disability onset date; (2) suffers from severe physical or mental impairments; (3) has severe impairments that meet or medically equal any of the listed impairments that automatically qualify as disabilities under the Social Security Act; and (4) has a residual functional capacity (RFC) that prevents the claimant from performing his or her past relevant work. *Id.* An RFC is the most an individual can do in a work setting despite the total limiting effects of all his or her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and Social Security Ruling (SSR) 96-8p. The claimant bears the burden of proof in the first four steps to establish his or her disability.

At the fifth step, however, the burden shifts to the Commissioner to show that jobs exist in a significant number in the national economy that the claimant can perform given his or her RFC, age, education, and work experience. *Gomez v. Chater,* 74 F.3d 967, 970 (9th Cir. 1996). If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of

OPINION AND ORDER- 2

awarding benefits. 20 C.F.R. §§ 404.1520(f)(1), 416.920(a). On the other hand, if the Commissioner can meet its burden, the claimant is deemed to be not disabled for purposes of determining benefits eligibility. *Id.*

The Commissioner's decision must be affirmed if it is based on the proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted).

When reviewing the decision, the court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances where the evidence supports either outcome. *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998). If, however, the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision, the decision must be set aside. *Id.* at 720.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff was born on April 17, 1955, and was fifty-one years old on his alleged disability onset date. He protectively filed applications for DIB and SSI on June 11, 2007. In his applications, he alleged that he has been disabled since June 6, 2006, based on a number of physical impairments. He was last insured for purposes of benefits eligibility through March 31, 2012. His applications were denied initially and upon reconsideration.

OPINION AND ORDER- 3

At plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on December 8, 2009 in Bend, Oregon. The ALJ heard testimony from plaintiff, who was represented by counsel, and an independent vocational expert (VE). Following the hearing, the ALJ issued a decision finding that plaintiff was not disabled as defined in the Social Security Act.

First, the ALJ found that plaintiff's earnings of over $5,000 in each of the first two quarters of 2009 qualified as SGA. Tr. 25, Finding 2.[1] The ALJ therefore concluded that plaintiff was not disabled from January through June of 2009. Tr. 25.

Second, the ALJ found that plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, pseudoarthrosis at L4-S1, degenerative joint disease of the right shoulder, glenohumeral osteoarthritis bilaterally, and obesity. Tr. 26, Finding 3. The ALJ noted that plaintiff's episodic gastrointenstinal conditions, gastroesophageal reflux disease (GERD), and right knee pain were non-severe impairments. Tr. 26. After considering plaintiff's severe and non-severe impairments, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 27, Finding 4.

After consulting the entire record, the ALJ concluded that plaintiff had the RFC to (1) lift and carry twenty pounds occasionally, and ten pounds frequently; (2) stand and/or walk for two hours in an eight hour work day, and sit for six hours in an eight hour work day; (3) that plaintiff should not climb ladders, ropes, and scaffolds, but can perform all other postural activities on an

---

[1] Tr. refers to the Transcript of the Administrative Record.

OPINION AND ORDER- 4

occasional basis, and can balance frequently; (4) cannot reach overhead with his right upper extremity, but can frequently, although not constantly, reach with his upper extremities bilaterally; and (5) must be able to alternate between sitting and standing at will. Tr. 27, Finding 5. Based on plaintiff's RFC and testimony from the VE, the ALJ determined that plaintiff was able to perform his past relevant work as an admissions counselor. Tr. 32, Finding 6. The ALJ alternatively found that plaintiff could also perform other work existing in significant numbers in the national economy. Tr. 33, Finding 10. Therefore, the ALJ concluded that plaintiff was not disabled. The Appeals Council denied plaintiff's request for administrative review, making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently initiated this action seeking judicial review.

## DISCUSSION

Plaintiff contends that this court must reverse and remand the Commissioner's final decision based on five alleged errors in the ALJ's decision: (1) the ALJ concluded that plaintiff's right knee osteoarthritis was a non-severe impairment; (2) the ALJ failed to discuss any medical findings in his step three analysis; (3) the ALJ failed to quantify sitting and standing requirements; (4) the ALJ improperly relied on the VE's testimony; and (5) the ALJ improperly rejected plaintiff's testimony.[2] For the following reasons, this court finds no error and affirms the ALJ's decision.

---

[2] The court notes that plaintiff's briefing leaves much analytic work for the court, and consists primarily of block quotes from case law without any analysis about the application of the legal principles to the facts in this case. Plaintiff's counsel is advised against ineffective briefing in the future.

1.  **Step Two**

In step two of the disability determination, an ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). An impairment or combination of impairments is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. § 404.1521. An impairment should be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (citations omitted). The step two inquiry is meant merely as a *de minimus* screening for groundless claims, so a finding of non-severity must be based on clearly established medical evidence. *Id.* at 687 (citation omitted). Thus, this court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that plaintiff's right knee osteoarthritis was not a medically severe impairment. *Id.* (citing SSR. 85-28).

Plaintiff contends that his total right knee replacement, as documented in records submitted to the Appeals Council after the ALJ issued his opinion, constitutes a severe impairment that should have been considered in the remainder of the five-step analysis. Because this evidence was submitted to and considered by the Appeals Council, it is part of the administrative record and this court must consider it even though the ALJ did not have the benefit of this information during the initial application hearing. *See* Tr. 6; *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).

OPINION AND ORDER- 6

The evidence establishes that plaintiff had persistent right knee pain since January of 2010 that resulted in a right total knee arthroscopy in May of 2010. Tr. 981-95. Plaintiff recovered well from the procedure, and was reportedly pain-free and able to walk three miles a day less than four months after the surgery. Tr. 998-1001. One year after the surgery, plaintiff reported that he was "quite active" with regular exercise and only occasional tenderness. Tr. 1004. This additional medical evidence does not reveal an impairment that would be expected to last more than twelve months, as required by 42 U.S.C. § 423(d)(1)(A), or that significantly limited plaintiff's ability to perform basic work activities. Accordingly, the court finds no error at step two.

**2.     Step Three**

Plaintiff next argues, without any analysis, that the ALJ erroneously failed to discuss any medical findings in his step three analysis. This court disagrees. At step three, an ALJ must determine whether a claimant meets or equals one of the listed impairments that are presumed to be disabling. 20 C.F.R. § 404.1520(a)(4)(iii). To determine whether a claimant equals a listing under step three, the ALJ must make sufficient findings and adequately explain his evaluation of the combined effects of the claimant's impairments. *Marcia v. Sullivan*, 900 F.2d 172, 175-76 (9th Cir. 1990). "Equivalence is determined on the basis of a comparison between the symptoms, signs and laboratory findings about the claimant's impairment as evidenced by the medical records with the medical criteria shown with the listed impairment. *Id.* (citation and internal quotation omitted).

The ALJ described the medical evidence as part of his step two finding, and then further explained his evaluation of the evidence under his step four heading. Tr. 26-32. The ALJ noted

OPINION AND ORDER- 7

in his step three finding that "[n]o treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment." Tr. 27. The ALJ explained that he gave particular consideration to Listing 1.00 for musculoskeletal impairments. 20 C.F.R. pt. 404, Subpt P, App. 1.

Although the ALJ's step three paragraph on its own may have not satisfied the specificity requirement when read out of context, the ALJ's thorough examination of the medical evidence in the pages following his finding is adequate to meet the standards set out in *Marcia*. *Evenhus v. Astrue*, 815 F. Supp. 2d 1154, 1160 (D. Or. 2011) (citing *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001)). Plaintiff also has not cited a particular listing or a plausible theory of how any of his impairments, singly or in combination, meet or equal a listing. It appears that plaintiff again points to his right knee surgery as evidence that should have been considered, but the medical evidence does not establish that plaintiff would meet the duration requirement.

The only listing that seems to be at issue is Listing 1.00. This listing is defined as a "loss of function" due to a number of musculoskeletal disorders, which requires "an inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, . . . [that] must have lasted, or be expected to last, for at least [twelve] months." 20 C.F.R. pt. 404, Subpt P, App. 1. Substantial evidence supports the ALJ's finding that plaintiff does not have an impairment or combination of impairments that would equal an inability to ambulate effectively for at least twelve months. Tr. 779-90. Additionally, even if the ALJ had the benefit of the more recent medical evidence showing that plaintiff required right knee surgery, his inability to ambulate lasted less than the requisite twelve months. *See* Tr. 981-1004. Accordingly, plaintiff has not demonstrated an error at step three.

OPINION AND ORDER- 8

### 3.     Step four and RFC determination

Plaintiff contends that the ALJ erred by "failing to quantify sitting/standing requirements in the sit/stand context." Pl.'s Br. at 6. Plaintiff notes that when a claimant must alternate between sitting and standing, an ALJ's RFC assessment "must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p at *7. In this case, the ALJ determined that plaintiff must be able to "alternate his position from sitting to standing at will." Tr. 27. This finding is consistent with plaintiff's primary care physician's opinion that he could work an administrative job where he could switch from sitting to standing, Tr. 758, and gives plaintiff the greatest flexibility to choose when to alternate his position. *See* Tr. 98-99, 107 (plaintiff testifying that he could sit or stand for thirty minutes at a time). The court concludes that the ALJ's finding is supported by substantial evidence and is sufficiently specific for the VE to be able to testify regarding jobs that could accommodate a sit/stand option.

### 4.     Reliance on VE testimony at steps four and five

Plaintiff asserts that the ALJ erred by relying on the VE's testimony which did not comport with the Dictionary of Occupational Titles (DOT). "Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p at *2. When an apparent unresolved conflict exists between the VE's testimony and the DOT, neither evidence automatically trumps. *Id.* Instead, the ALJ "must elicit a reasonable explanation for the conflict" before relying on the VE's evidence to support a determination about whether the claimant is disabled. *Id.* A reasonable explanation includes information about a particular job's requirements that the VE obtained from other reliable publications, employers, or from a VE's personal experience. *Id.*; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th

OPINION AND ORDER- 9

Cir. 2008) (noting that an ALJ "may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation").

In this case, the VE was inconsistent with the DOT when she testified that plaintiff could perform his past relevant work as an admissions counselor.[3] Tr. 125. The VE stated that this position could be performed by sitting most of the time, even though that occupational description was inconsistent with the DOT. *Id.* The ALJ then asked the VE in accordance with the agency's regulations for her reason to depart from the DOT. *Id.* The VE explained that her testimony was based on her personal knowledge of that type of position and plaintiff's description of the job as he actually performed it. *Id.* In his later written decision, the ALJ explained that he relied on the VE's testimony, notwithstanding the conflict with the DOT, because it was derived from "her occupational knowledge of the actual performance of this job in the competitive employment market." Tr. 32. The court concludes that the ALJ did not err by finding that the VE provided an adequate explanation for the conflict with the DOT and appropriately relied on the VE's testimony. *See Buckner-Larkin v. Astrue*, 450 F. App'x 626, 628-29 (9th Cir. 2011) (unpublished) (holding that the ALJ did not err by relying on the VE's recommendation of jobs

---

[3] The record also presents a inconsistency regarding whether plaintiff could perform the admissions counselor position with a sit/stand option. At one point, the VE testified that she was uncertain whether the counselor position could be performed with a sit/stand option at will, but then later confirmed that it could be performed with that restriction. Tr. 124-25. However, because plaintiff did not raise this issue in his Opening Brief, the court declines to discuss it further. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (noting that the district court need only consider claims that were raised in a party's opening brief); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (noting that courts will "review only issues which are argued specifically and distinctly in a party's opening brief"). Additionally, the ALJ's alternative finding at step five negates any reversible error at step four.

OPINION AND ORDER- 10

that would allow for an at-will sit/stand option, even though it conflicted with the DOT, because his testimony was based on his own labor market surveys, experience, and research).

Moreover, even if the ALJ had erred at step four by determining that plaintiff could perform his past relevant work as an admissions counsel, that alleged error is harmless. *Tommasetti*, 533 F.3d at 1042 (holding that an error at step four was harmless because the ALJ made a proper alternative finding at step five). After concluding that plaintiff could perform his past relevant work, the ALJ continued to step five and made an alternative finding that plaintiff could perform other work existing in the national economy. The ALJ determined that based on plaintiff's RFC, his past work experience, and his need to alternate between sitting and standing at will he could perform the job of an information clerk, with approximately 1,100 jobs in the regional economy. Tr. 127. This finding is supported by substantial evidence in the record.

5. **Plaintiff's credibility**

Finally, plaintiff contends that the ALJ improperly rejected plaintiff's testimony. In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue,* 674 F.3d 1104, 1112 (9th Cir. 2012) (citations omitted). First, the ALJ must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citations and quotation omitted). If the claimant has presented such evidence, and no evidence of malingering exists, then the ALJ must give "specific, clear and convincing reasons" to reject the claimant's testimony about the severity of his or her symptoms. *Id.* (citation omitted).

OPINION AND ORDER- 11

The ALJ, however, is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Instead, the ALJ may use "ordinary techniques of credibility evaluation" to evaluate the claimant's testimony. *Molina*, 674 F.3d at 1112 (citation omitted). The ALJ may consider inconsistencies in the claimant's testimony or between the testimony and the claimant's conduct; unexplained or inadequately explained failures to seek treatment or to follow a prescribed course of treatment; and "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (citations and quotation omitted). The ALJ also may discredit a claimant's testimony when the claimant "reports participation in everyday activities indicating capacities that are transferable to a work setting." *Id.* at 1113 (citations omitted). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.*

Here, the ALJ described the medical evidence at length and concluded that plaintiff's statements concerning the intensity, persistence, and limiting effects of plaintiff's impairments were not fully credible. Tr. 27-32. The ALJ noted that plaintiff applied for disability even though he testified that he is capable of working, he sustained a job at the SGA level for six months during the adjudicatory period, he filed for unemployment during the same period he applied for disability, he gave inconsistent reports to his medical providers, and his reported activities were inconsistent with his subjective complaints. Tr. 32. The ALJ also noted that all treating, examining, and non-examining physicians opined that plaintiff is capable of performing

OPINION AND ORDER- 12

at least sedentary work. *Id.* These reasons for rejecting plaintiff's testimony are supported by substantial evidence in the record and are specific, clear, and convincing.

The record presents no evidence of malingering, so the ALJ was required to provide clear, convincing, and specific reasons for rejecting plaintiff's testimony. Plaintiff contends that the ALJ never made the requisite finding that his reported activities were substantial and transferable, or that plaintiff's statements about his ability to work included predictable, full-time employment. Pl.'s Br. at 8-9. Again, this court disagrees.

A claimant's daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citation omitted). Plaintiff testified that he obtained a River Restoration Certificate from Portland State University during his alleged period of disability. Tr. 67-68. As part of the program, plaintiff completed several hours of course work on campus and work in the field. *Id.* The field work included driving out to the coast, camping in the back of his truck, and collecting data. Tr. 68. Plaintiff also testified that he went on a three-day antelope hunt which included a 150-175 mile commute, driving on gravel roads, camping in his truck, and field dressing the antelope on his own. Tr. 63-67. Substantial evidence supports the ALJ's finding that these physical activities could transfer to a work setting.

Additionally, plaintiff confirmed that he believed he was able to work when he applied for unemployment benefits. Tr. 74-75; *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008) (noting that receipt of unemployment benefits can be a basis to discredit a claimant when he holds himself out as able to work). Plaintiff also testified at the

OPINION AND ORDER- 13

hearing that he believed he was still capable of working a sedentary job with flexible hours to accommodate his medical issues, but that he had been unable to find such employment. Tr. 74-75. Accordingly, the court finds no error in the ALJ's credibility assessment.

## **CONCLUSION**

For the reasons provided, this court concludes that the Commissioner's findings were based upon the correct legal standards and were supported by substantial evidence existing in the record. The decision of the Commissioner denying Allen Van Dyke's applications for disability benefits must be AFFIRMED.

IT IS SO ORDERED.

DATED this 5 day of November, 2012.

_____
Ancer L. Haggerty
United States District Judge

OPINION AND ORDER- 14